UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN MARK ANDREWS | ) | Case No.: 1:14 CV 623 |
| JUDEE ANDREWS, | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES R. FLAIZ, *et al.*, | ) | |
| | ) | MEMORANDUM OF OPINION |
| Defendants | ) | AND ORDER |

*Pro se* Plaintiffs John Mark Andrews and Judee Andrews filed this action under 42 U.S.C. §§ 1983, 1985, and 1986 against Geauga County Prosecutor James R. Flaiz, former Geauga County Prosecutor David Joyce, Geauga County Assistant Prosecutor Nicholas Burling, Geauga County Assistant Prosecutor Matthew Greenway, Geauga County Sheriff Daniel McClelland, Geauga County Deputy Sheriff J. Jonovich, Geauga County Deputy Sheriff John Hiscox, Unknown Geauga County Prosecutors, Unknown Geauga County Sheriff's Deputies (collectively referred to as the "Geauga County Defendants"), Chardon Police Officer James Gillette, Chardon Police Chief Tim McKenna, Chardon Police Officer Troy Duncan, Chardon Police Officer James Bryant, Chardon Police Officer Bryon Childs, Chardon Police Officer Paul Pfiester, Chardon Police Officer Deborah Easton, Chardon Police Officer Mike Shaw, Chardon Police Officer Sally Harmasek, and Unknown Chardon Police Officers (collectively referred to as the "Chardon Defendants"). In the Complaint, Plaintiffs assert claims pertaining to John Andrews's arrest and prosecution.  They seek injunctive relief and monetary damages.

Plaintiffs filed a Motion for Default Judgment against Joyce, Burling, Greenway, McClelland, Jonovich, and Hiscox on May 16, 2014, claiming they did not enter an appearance. (ECF No. 11).  The Court's docket reflects that a Return of Service was filed on May 2, 2014 indicating these Defendants were served on April 14, 2014.  (ECF No. 6).  On May 6, 2014, these Defendants filed a Motion for Leave to Plead until May 30, 2014.  (ECF No. 9).  That Motion was granted on May 7, 2014.  They filed their Motion to Dismiss on May 19, 2014, well within the time granted by the Court.  The Motion for Default Judgment (ECF No. 11) is **denied**.

The Geagua County Defendants filed a Motion to Dismiss under Federal Civil Rule 12(b)(6) on May 19, 2014.  (ECF No. 16).  The Chardon Defendants filed a Motion to Dismiss under Rule 12(b)(6) on May 23, 2014.  (ECF No. 17).  For the reasons set forth below, the Motions to Dismiss are **granted** and this action is dismissed.

### Background

On the evening of April 2, 2012, Kory Johnson ran into the lobby of the Chardon Police station claiming his uncle, John Andrews, held a loaded AK-47 to his head and attempted to pull the trigger.  Plaintiff claims his nephew was drunk at the time he made the report, and denies its veracity.  Chardon Police Officer Childs and Geauga County Deputy Sheriff Jonovich were dispatched to Mr. Andrews's residence.  John Andrews was not at home; however, the officers spoke to Plaintiff's wife, Judee Andrews, who also lived at the residence.  Judee Andrews told police her husband had not fired weapons that evening.

Chardon police continued to search for John Andrews.  After hours of looking for him, they found him in an alley on Court Street.  Plaintiff claims the officers dragged him from his vehicle using excessive force and arrested him on charges of felonious assault, domestic violence, and

2

having weapons under disability.  Plaintiff alleges that after he was in custody, unknown Chardon Police Officers went to his home and discovered rifles, guns, and ammunition on the front porch. The weapons were taken as evidence.  Plaintiff alleges Lieutenant Duncan and Deputy Jonovich went to his place of work to search for additional weapons.  Jonovich found two weapons in or around a dumpster, although, there is some dispute regarding the exact location where the weapons were discovered.

Plaintiffs allege Prosecutor David Joyce advised Lieutenant Troy Duncan on the initial charges that should be brought against John Andrews.  Bond was set at his initial arraignment and although Plaintiffs assert it was excessive, they indicate they were able to post bond and secure John Andrews's release.

Plaintiffs also allege that upon John Andrews's release on bond, they filed discovery requests with the Geauga County Prosecutor's Office and public records requests with the Chardon Police Department seeking, in part, the dashboard camera video footage of his arrest.  They allege Sally Harmasek, Unknown Chardon Police Officers, and James Gillette destroyed all of the video and audio footage of his arrest, which he contends would show "unreasonable excessive force, physical assaults/threats, lack of miranda rights, and physical assaults/threats committed inside/outside of the Chardon PD by Co-Defendants et al from the day of the alleged incident... ."  (ECF No. 1 at 6). They claim Police Chief Tim McKenna testified that Chardon Police policy requires footage to be retained for one year.  Plaintiffs then allege "it is [the] custom/policy of the Defendant Chardon PD Chief Tim McKenna [and] the Chardon PD Policy/Custom to destroy video/audio recordings of Chardon PD dashboard cams within 10 days as falsely asserted [by] Defendant Sally Harmesek to the state trial court by Defendants Nicholas Burling and Matthew Greenway that the Chardon PD

3

does not retain police dashboard cam video/audio for one year... ." (ECF No. 1 at 7). Plaintiffs allege this proves that McKenna was deliberately indifferent in failing to train or discipline his officers.

A grand jury indicted John Andrews on felonious assault and weapons under disability charges on April 27, 2012. Prior to trial, Andrews subpoenaed sixteen individuals from the Geauga County Prosecutor's Office and the Chardon Police Department. The court, however, quashed many of these subpoenas. The case went to trial, but resulted in a mistrial on October 12, 2012.

The case was tried a second time. John Andrews filed twenty-one subpoenas which the court again quashed. The prosecution's key witness, Kory Johnson, fled from Ohio to California after his encounter with John Andrews. He could not be reached, would not respond to correspondence, and refused to appear to testify at trial. Without the testimony of the victim, the jury acquitted Mr. Andrews on December 18, 2012. He filed a Motion for Return of his Weapons and the Geauga County Court of Common Pleas ordered the Chardon Police Department to return the weapons on February 7, 2013. It is not clear whether all of the weapons in question were returned.

Plaintiffs assert seven causes of action which overlap and are redundant. Together, these causes of action assert that the Defendants, acting in their official and individual capacities, violated Plaintiff's federal constitutional rights to equal protection and due process under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments. In addition, they claim that Defendants conspired to violate their federal constitutional rights to equal protection and due process under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. Finally, while not specifically listing them as causes of action, Plaintiffs state in the body of their Complaint that the Defendants subjected John Andrews to malicious prosecution, destroyed evidence, deprived Plaintiffs of their right to bear

4

arms, and used excessive force in the course of John Andrews's arrest. Because the pleadings of *pro se* litigants are held to a less stringent standard than those drafted by attorneys, the Court liberally construes the Complaint to include these claims. Plaintiffs seek an order requiring Defendants to return their weapons, and awarding them monetary damages in the amount of $1,000,000.00. They also request class action certification.

The Geagua County Defendants filed a Motion to Dismiss under Federal Civil Rule 12(b)(6) on May 19, 2014. (ECF No. 16). Initially, they assert Judee Andrews lacks standing to bring most of the claims in this action because she is not the injured party. Most of Plaintiffs' claims assert injury to John Andrews, not Judee Andrews. Furthermore, they contend prosecutors Flaiz, Joyce, Burling, and Greenway are entitled to absolute immunity for actions and decisions made in the course of John Andrews's prosecution. They assert Plaintiffs' claim of malicious prosecution is time barred by a one-year statute of limitations and fails to state a claim upon which relief may be granted. They contend that Plaintiffs' excessive force claim fails to state a claim upon which relief can be granted against them because Plaintiffs do not allege any County Defendant was personally involved in applying force. They assert Plaintiffs' allegations of witness tampering fall within the parameters of a federal criminal statute, 18 U.S.C. § 1513, and assert Plaintiffs failed to allege facts to prove elements of witness tampering. They analyze Plaintiffs' allegations of spoilation of evidence under Ohio tort laws and conclude the claim does not meet the heightened pleading requirement for fraud under Federal Civil Procedure Rule 9. They assert Plaintiffs' claims with respect to the subpoenas were already addressed by the Geauga County Court of Common Pleas and are therefore barred by *res judicata*. Finally, they assert Plaintiffs failed to allege facts to establish all of the elements of a conspiracy under 42 U.S.C. § 1983 or under Ohio tort law.

5

The Chardon Defendants filed a Motion to Dismiss under Rule 12(b)(6) on May 23, 2014. (ECF No. 17).  They also assert Judee Andrews lacks standing to sue for her husband's alleged injuries.  They further assert Plaintiffs failed to plead their claims with sufficient factual support to state a viable claim under 42 U.S.C. § 1983.  Specifically, they contend that none of Plaintiffs' allegations suggest a violation of a right delineated in the First Amendment.  They claim the Fifth Amendment Due Process Clause applies to the federal government, not to states.  They contend the Geauga County Common Pleas Court already decided the issues pertaining to Plaintiffs' subpoenas and any Sixth Amendment claims that he could have asserted with respect to those subpoenas are barred by *res judicata*.  Moreover, they point out that Plaintiffs suffered no injury by the rejection of the subpoenas because John Andrews was acquitted.  They argue Plaintiffs's Fourth Amendment claims must be dismissed against them because Plaintiffs do not allege any of the Chardon Defendants personally participated in the search and seizure of property, and further assert that the weapons that were seized were found in plain view on the porch.  With respect to Plaintiff's claims of use of excessive force during John Andrews's arrest, Defendants argue the allegations are vague, and fail to state a claim upon which relief may be granted.  They assert that the Plaintiffs fail to allege which Defendants were personally involved or what actions were taken that Plaintiffs deemed to be excessively forceful.  The Chardon Defendants assert that although Plaintiffs state that bail was excessive, they do not indicate the amount of bail set, nor do they suggest any of the Chardon Defendants were involved in setting bail.  They note Plaintiffs' claims for prosecutorial misconduct could arise under the Fourteenth Amendment, but point out that none of the Chardon Defendants were responsible for prosecuting the case.  They contend that the spoilation claim also arises under the Fourteenth Amendment and that Plaintiffs failed to allege fraudulent conduct for the purpose of

6

disrupting Plaintiffs' civil rights case. Finally, they assert Plaintiffs failed to satisfy the elements of a conspiracy claim under 42 U.S.C. §§ 1983 or 1985.

### Standard of Review

In deciding a Rule 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted, the Court must determine the legal sufficiency of the Plaintiffs' claims. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir.1993). *See also, Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (same); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (clarifying the legal standard for a Rule 12(b)(6) motion to dismiss).

When determining whether a plaintiff has stated a claim upon which relief may be granted, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations to be true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A plaintiff is not required to prove, beyond a doubt, that the factual allegations in the complaint entitle him to relief, but must demonstrate that the "[f]actual allegations [are] enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true." *Id*. at 555. The plaintiffs' obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

The Supreme Court in *Iqbal* clarified the plausibility standard outlined in Twombly by stating that "[a] claim has facial plausibility when the plaintiff pleads content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Additionally, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. Making this

determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* For this analysis, a Court may look beyond the allegations contained in the Complaint to exhibits attached to or otherwise incorporated in the complaint, all without converting a motion to dismiss to a motion for summary judgment. FED.R.CIV.P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

## Analysis

### A.  Standing to Bring Claims

All Defendants assert Plaintiff Judee Andrew lacks standing to bring the claims in this Complaint because they are premised solely on alleged injuries her husband sustained. In every federal case, the party bringing the suit has the burden to establish standing to prosecute the action. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Federal courts must balance "the heavy obligation to exercise jurisdiction," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 820 (1976), against the "deeply rooted" commitment "not to pass on questions of constitutionality" unless adjudication of the constitutional issue is necessary. *Spector Motor Service, Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944). Consistent with these principles, standing jurisprudence has two components: Article III standing, which enforces the Constitution's case or controversy requirement, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-62 (1992); and prudential standing, which embodies "judicially self-imposed limits on the exercise of federal jurisdiction." *Allen v. Wright*, 468 U.S. 737, 751 (1984). To establish Article III standing, the Plaintiff must show that the conduct of which he complains has caused him to suffer an "injury in fact" that a favorable judgment will redress. *See*

*Lujan*, 504 U.S. at 560-61.  Prudential standing encompasses "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a Plaintiffs' Complaint fall within the zone of interests protected by the law invoked."  *Allen*, 468 U.S. at 751.

To have standing to assert claims in this action, Judee Andrews must first demonstrate she suffered an "injury in fact," an invasion of a legally protected interest that is (a) concrete and particularized,  and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  *Warth*, 422 U.S. at 508; *see Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).  Second, she must allege facts to suggest there is a causal connection between the injury she suffered and the Defendants' conduct of which she complained.  *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42, (1976).  In other words, the injury has to be reasonably traceable to Defendants' actions, and not the result of the independent action of a third party." *Id.*  Third, it must be "likely" as opposed to merely "speculative," that the injury will be redressed by a favorable decision.  *Id*. at 38.

In this case, with the possible exception of the claims pertaining to the seizure of the weapons from Plaintiffs' home, the causes of action all concern events surrounding John Andrews's arrest and prosecution.  The alleged injuries are all attributable to John Andrews.  As a Plaintiff, Judee Andrews must assert claims based on her own legal rights and interests, and cannot rest her claims to relief on the legal rights or interests of her husband.  *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Allstate Insurance Co. v. Wayne County*, 760 F.2d 689, 693 (6th Cir. 1985).  The fact that she may be collaterally affected by the adjudication of her husband's rights does not extend the court's Article III powers to her.  *Allstate Insurance Co.*, 760 F.2d at 692.  She lacks standing to assert all claims except those pertaining to her ownership of weapons seized from her home.

### B. Official Capacity Claims

Plaintiffs assert claims against all of the Defendants in their official capacities. A suit against a public servant in his official capacity imposes liability on the office he represents. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). For the Geauga County Defendants, the official capacity claims are construed against Geagua County. For the Chardon Defendants, the official capacity claims are construed against the City of Chardon.

As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a *respondeat superior* theory of liability. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691(1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. A municipality can therefore be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." *Id.* at 690; *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999). Plaintiffs must therefore prove two basic elements: (1) that a constitutional violation occurred; and (2) that Geauga County or the City of Chardon is responsible for that violation. *Doe v. Claiborne County*, 103 F.3d 495, 505-06 (6th Cir. 1996)). With respect to this second element, "[a] plaintiff ... must identify the policy, connect the policy to [Geauga County or the City of Chardon] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1994)). It is not sufficient to detail the actions of the employee and then add in a conclusory manner that the employee acted pursuant to a policy or custom in an attempt to hold the municipality liable for the

10

employee's actions.

Plaintiffs' only allegation which reasonably suggests a particular custom or policy that allegedly caused injury to John Andrews is the policy of the Chardon Police Department to destroy police dashboard camera footage.  To assert a successful claim against a municipality under § 1983, Plaintiff must first demonstrate that a constitutional violation occurred.  *Doe*, 103 F.3d  at 505-06.  Plaintiffs, however, do not assert a particular legal cause of action with respect to the dash board footage, except to state they consider it spoilation of evidence.  As no other constitutional claim is apparent on the face of the Complaint, the Court liberally construes this claim as asserting a denial of due process under the Fourteenth Amendment.

To succeed on a claim for denial of due process, Plaintiffs must first allege they were deprived of a constitutionally protected liberty or property interest.  While John Andrews may have a constitutionally protected liberty interest in a fair trial, he has not alleged facts to suggest that the destruction of the police cruiser dash board camera footage of his arrest denied him a fair trial.  He was charged with the felonious assault of Kory Johnson, and with possessing weapons under disability.  He does not indicate he was charged with resisting arrest or assaulting a police officer.  His arrest was not an issue at his trial, and therefore, his inability to produce the dashboard camera footage of his arrest did not deprive him of a defense to the charges against him.  Moreover, he was acquitted of the charges.  He cannot claim he was denied a fair trial in his criminal case when the police destroyed the dashboard camera video footage of his arrest.

In addition, Plaintiffs have offered no support for a contention that they had a constitutionally protected property interest in the dashboard camera footage.  To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a

11

unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Those interests are not created by the Constitution.  *Id.*  "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law– rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Id.*  Plaintiffs do not cite to any authority giving them a constitutionally protected property interest in the dashboard camera footage.  Absent a protected property interest in the video, Plaintiffs cannot prevail on a claim that they were denied due process before the property was destroyed.

Because Plaintiffs have not demonstrated that the officers' conduct in erasing or destroying the dashboard camera video footage violated their constitutional rights, the Court need not continue the inquiry to determine if the officers were acting pursuant to a policy or custom of the City of Chardon, or whether they were acting solely in their individual capacities.  Plaintiffs cannot sustain a claim against the officers in their official capacities or individual capacities for destruction of the dashboard camera footage.

Aside from the destruction of the dashboard camera footage, Plaintiffs do no allege facts to suggest that the Defendants' other actions were the result of an official policy or custom of Geauga County or the City of Chardon.  Plaintiffs' claims against the Defendants in their official capacities are dismissed.

### C. *Respondeat Superior Individual Capacity*

Plaintiffs also include claims against Chardon Police Chief Tim McKenna and Geauga County Sheriff Daniel McClelland in their individual capacities for failing to train their employees. *Respondeat superior* is not a proper basis for liability under § 1983.  *Leary v. Daeschner,* 349 F.3d

888, 903 (6th Cir. 2003); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).  In other words, the Chief of Police and the County Sheriff cannot be held liable for the actions of their employees based solely on their right to control or supervise them.  *Leary,* 349 F.3d at 903; *Bellamy,* 729 F.2d at 421.  Claims for liability must also be founded on more than "simple awareness of employees' misconduct."  *Leary,* 349 F.3d at 903.  A supervisor's failure to monitor, control or train the offending individual therefore is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it."  *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir. 1982)).  At a minimum, the Plaintiffs must show that the supervisor "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  *Id.* (quoting *Hays,* 668 F.2d at 874).

To prevail on a "failure-to-train" claim under § 1983, Plaintiffs must prove the supervisor's training program is inadequate to the tasks that the officers must perform; that the inadequacy is the result of the supervisor's deliberate indifference; and that the inadequacy actually caused Plaintiffs' injury.  *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989).  Even well trained officers make mistakes, and for this reason liability cannot be imposed on their supervisors  unless the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the supervisor or the municipality can reasonably be said to have been deliberately indifferent to the need.  *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

In all of Plaintiffs' allegations, there is no suggestion that McKenna or McClelland were personally involved in the arrest as it transpired.  Plaintiffs do not allege these Defendants were aware of the incidents that occurred or that they approved of the actions of the officers.  While

13

Plaintiffs allege McKenna and McClelland failed to train their officers, this claim seems to arise in the context of the destruction of the dashboard camera audio and video footage.  A prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  As discussed above, Plaintiffs failed to establish that the destruction of the dashboard camera video and audio footage violated their constitutional rights.  Consequently, the failure to train the officers with respect to the preservation of dashboard camera footage did not result in a constitutional violation.  The claims against McKenna and McClelland are dismissed.

### D.  Prosecutorial Immunity

Flaiz, Joyce, Burling, and Greenway are entitled to absolute immunity for claims against them pertaining to their roles in bringing charges against John Andrews and representing the state in his prosecution.  *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993).  A prosecutor must exercise his or her best professional judgment both in deciding which suits to bring and in conducting them in court.  *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006).  This duty could not be properly performed if the prosecutor is constrained in making every decision by the potential consequences of personal liability in a suit for damages.  *Id.* These suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the attribution of improper and malicious actions to the State's advocate.  *Imbler*, 424 U.S. at 424-25; *Skinner*, 463 F.3d at 525.  Absolute immunity is therefore extended to prosecuting attorneys when the actions in question are those of an advocate.  *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003).  Immunity is granted not only for actions directly related to initiating a prosecution and presenting the State's case, but also to activities undertaken

14

"in connection with [the] duties in functioning as a prosecutor." *Imbler*, 424 U.S. at 431; *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002).

In this case, the challenged actions of Geauga County Prosecutors Flaiz, Joyce, Burling and Greenway were all intimately associated with the judicial phase of John Andrews's prosecution. The Complaint contains no facts which indicate these Defendants participated in any other kind of activity for which they could be liable to Plaintiffs.  Consequently, these Defendants are entitled to absolute immunity.  Plaintiffs' Fourth Amendment claims for malicious prosecution, their Sixth Amendment claims pertaining to the subpoenas and witness tampering, their Eighth Amendment claim for excessive bail, and their Fourteenth Amendment claims for prosecutorial misconduct and spoilation of evidence as it pertain to the actions of the prosecutors are dismissed as these claims pertain solely to Geauga County Prosecutors Flaiz, Joyce, Burling and Greenway.

### E.  Individual Capacity Claims against Chardon Police Officers and Geauga County Sheriff's Deputies

Having dismissed the claims against the Geauga County Prosecutors, Chardon Chief of Police Tim McKenna, Geauga County Sheriff Daniel McClelland, and the claims against all Defendants in their official capacities, the only remaining claims are those asserted against Unknown Chardon Police Officers, Chardon Police Officers Duncan, Pfiester, Hamasek, Bryant, Childs, Easton, and Shaw, Unknown Geauga County Deputy Sheriffs, and Geauga County Sheriff's Deputies Jonovich and Hiscox, in their individual capacities.

#### 1.  First Amendment

Plaintiffs assert, without explanation, that the Defendants violated their First Amendment rights.  The First Amendment contains six constitutional rights including, freedom from the

15

establishment of religion, free exercise of religion, freedom of speech, freedom of the press, right to peacefully assemble, and the right to petition the government for redress. None of these rights seem applicable to Plaintiffs' factual allegations. Although the standard of review is liberal for *pro se* Plaintiffs, it requires more than bare assertions of legal conclusions. *Bassett v. National Collegiate Athletic Ass'n* 528 F.3d 426, 437 (6th Cir. 2008). The Complaint must give the Defendants fair notice of what the Plaintiffs' claims are and the grounds upon which they rest. *Id.* Plaintiffs do not adequately identify their First Amendment claims to give the Defendants notice of the type of claim they are attempting to assert. Their First Amendment claims are therefore dismissed.

### 2. Second Amendment

While not specifically identified as a cause of action in their Complaint, Plaintiffs assert that the Defendants interfered with their right to bear arms under the Second Amendment. The Second Amendment to the United States Constitution provides: "A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held the Second Amendment protects an individual's right "to possess and carry weapons in case of confrontation," unconnected with service in a militia. More recently, in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), the Court held the Second Amendment right recognized in *Heller* is "fully applicable to the States." *Id.* at 3026. Although it struck down the District of Columbia handguns ban, *Heller* recognized and affirmed certain traditional limitations on the right to bear arms. As the Court noted, the Second Amendment does not grant "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626.

16

In this instance, Plaintiffs allege that their weapons were seized during a search of the exterior of their residence.  A Second Amendment claim is not available where the seizure of weapons occurred pursuant to a law enforcement search.  This claim is more properly analyzed under the Fourth Amendment, as the validity of the search and seizure will determine Plaintiffs' entitlement to the weapons and whether a constitutional violation occurred when they were seized. *Shepherd v. Sheldon,* No. 1:11 CV 127, 2011 WL 3608223, at *8 (N.D. Ohio Aug. 15, 2011); *Sutterfield v. City of Milwaukee,* 870 F.Supp.2d 633, 641-42 (E.D. Wis. 2012).   Accordingly, the claim is dismissed.

### 3.  Fourth Amendment

Although Plaintiffs do not specify any particular claims arising under the Fourth Amendment, the Court construes three: (1) those pertaining to the search of the porch of Plaintiffs' residence and the area near the dumpster at John Andrews's place of employment, and the seizure of weapons found at those locations; (2) the alleged use of excessive force during the arrest of John Andrews; and (3) malicious prosecution.

### a.  Search and Seizure of Weapons

The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, ... but upon probable cause."  U.S. Const. amend. IV.  In assessing whether the right against unreasonable searches and seizures has been violated, the Court must consider whether the action is "attributable to the government," and amounts to a "search" or "seizure" for Fourth Amendment purposes. *Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 614 (1989).  A search is defined in terms of a person's "reasonable expectation of privacy" and is analyzed under a

two-part test first delineated in *Katz v. United States*, 389 U.S. 347(1967): (1) "has the individual manifested a subjective expectation of privacy in the object of the challenged search?" and (2) "is society willing to recognize that expectation as reasonable?" *California v. Ciraolo*, 476 U.S. 207, 211 (1986); *Widgren v. Maple Grove Tp.,* 429 F.3d 575, 578 (6th Cir. 2005). A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). A person is considered to be "seized" within the meaning of the Fourth Amendment if a reasonable person in that Plaintiff's position would not have felt free to leave the scene. *See United States v. Knotts,* 460 U.S. 276, 281-82 (1983). If the contested action meets one of these requirements to be considered a search or a seizure, the Court then considers whether the search or seizure is "unreasonable" under the Fourth Amendment. *Id.*

Plaintiffs first allege officers returned to their home after John Andrews's arrest and confiscated weapons found on their front porch. They do not provide sufficient information to establish to support a claim that the search of his porch or the seizure of weapons was reasonable under the Fourth Amendment. Whether the intrusion is reasonable "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). Generally, to satisfy the reasonableness requirement, a search or seizure must be "accomplished pursuant to a judicial warrant issued upon probable cause." *Skinner*, 489 U.S. at 619 (1989). Stated differently, "a search ordinarily must be based on individualized suspicion of wrongdoing." *Chandler v. Miller*, 520 U.S. 305, 313 (1997). The Supreme Court, however, has recognized exceptions to this rule, when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause

18

requirement impracticable." *Skinner*, 489 U.S. at 619.  In limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of a warrant.  *Chandler*, 520 U.S. at 314.

Plaintiffs provide little factual information about this search of the property and the seizure of weapons.  They do not indicate whether the officers had a search warrant when they returned to the property nor do they describe the circumstances surrounding the seizure of the weapons.  They indicate the weapons were on their front porch but they do not indicate if they were in plain view or whether they were concealed in or under another object.  The Complaint does not contain sufficient information to suggest the seizure of the weapons was unreasonable.

Plaintiffs also challenge the seizure of weapons from or near a dumpster at John Andrews's place of employment.  In this instance, Plaintiffs do not suggest that John Andrews had a reasonable expectation of privacy in his employer's dumpster such that the search of the dumpster would trigger his Fourth Amendment rights.  They again do not indicate whether the officers were acting pursuant to a warrant.  Plaintiffs have not alleged sufficient facts to state a plausible claim under the Fourth Amendment in connection with the search of the dumpster and seizure of property at that site.

**b.  Use of Excessive Force in Arrest**

Because John Andrews was a free person at the time of his arrest, his assertion that excessive force was used during his arrest arises under the Fourth Amendment.  This claim is also analyzed under the reasonableness standard requiring that the officer's use of force be objectively reasonable, balancing the cost to the individual against the government's interests in effecting the seizure. *Graham v. Connor*, 490 U.S. 386, 395-96 (1989).  This standard contains a built-in measure of

19

deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case. *Id.* Because the officer's conduct is judged in terms of what would have been objectively reasonable under the circumstances, the officer's subjective intentions are irrelevant to the Fourth Amendment inquiry. *Id.* at 397.

Here, Plaintiffs provide very little information about John Andrews's arrest. They allege he "was stopped in [an] alley on Court Street, in Chardon, Ohio, dragged from Plaintiff's vehicle by Defendant Geauga County Sheriff's Deputy J. Jonovich and other Unknown Defendant Officers who used unreasonable excessive force, physically assaulted [and] threatened [him]... ." (ECF No. 1 at 5). The claim is stated solely as a legal conclusion without any factual allegations to suggest why the arrest was "unreasonable", or why the force applied was "excessive" or even what actions the Officers took to "assault" Andrews. Claims stated as legal conclusions are not sufficient to meet the minimum pleading requirements of Federal Civil Procedure Rule 8. Plaintiffs' claim for use of excessive force is dismissed.

### c.  Malicious Prosecution

Plaintiffs also assert a claim for malicious prosecution which, if asserted in a § 1983 civil rights action, arises under the Fourth Amendment. As an initial matter, the Geauga County Defendants assert that this claim is barred by a one year statute of limitations applicable to malicious prosecution claims that arise under Ohio tort law. The statute of limitations for § 1983 actions is the limitations period for personal injury actions in the state in which the § 1983 claim arises. *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985). When a state has multiple statutes of limitations for different categories of personal injury actions, the residual personal injury statute of limitations applies. *Owens v. Okure*, 488 U.S. 235, (1989). Following *Wilson* and *Owens*, the Sixth Circuit

20

Court of Appeals, sitting *en banc*, decided that the limitations period for all § 1983 actions arising in Ohio is the two-year period found in Ohio Revised Code § 2305.10. *Browning v. Pendleton*, 869 F.2d 989, 991 (6th Cir.1989). *See LRL Properties v. Portage Metro Housing Authority*, 55 F. 3d 1097 (6th Cir. 1995).

The date on which the statute of limitations begins to run in a civil rights action is a question of federal law. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir.1984). Ordinarily, the limitations period starts to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id*. at 273. In determining when the cause of action accrues in § 1983 actions, the Court looks to the event that should have alerted the typical lay person to protect his or rights. *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir.1991). John Andrews was arrested on April 2, 2012. He was acquitted on December 18, 2012. This action was filed on March 21, 2014. Regardless of whether the statute of limitations began to accrue on the date of his arrest, or on the date of his acquittal, this action was filed within the two year statute of limitations period for § 1983 actions.

To succeed on a malicious prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, Plaintiffs must satisfy four elements. First, they must show that a criminal prosecution was initiated against John Andrews and that the Defendants "made, influenced, or participated in the decision to prosecute." *Sykes v. Anderson,* 625 F.3d 294, 308-310 (6th Cir. 2010). Second, because a § 1983 claim is premised on the violation of a constitutional right, Plaintiffs must show that there was a lack of probable cause for the criminal prosecution. *Id.* Third, Plaintiffs must show that, "as a consequence of a legal proceeding," John Andrews suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. *Id.* Fourth, the criminal proceeding must have been resolved in the John Andrews's

favor.  *Id.*

Plaintiffs' Complaint supports only one of these four elements; John Andrews's eventual acquittal of the charges.  They do not allege facts to suggest any of the law enforcement Defendants made the decision or influenced the decision to prosecute John Andrews.  The claims against the prosecutors have already dismissed because they are entitled to absolute immunity for their decision to prosecute.  In addition, Plaintiffs have not suggested Defendants had no probable cause for the prosecution.  Subsequent acquittal does not establish that the Defendants lacked probable cause to arrest, search, detain, and prosecute.  *See Kompare v. Stein*, 801 F.2d 883, 891 (7th Cir. 1986).  The state's failure to prove guilt beyond a reasonable doubt does not mean that it did not meet the lesser probable cause standard which requires only a reasonable belief that an offense has been committed and that the criminal defendant committed the crime.  *See Williams v. Kobel*, 789 F.2d 463, 470 (7th Cir. 1986).  Finally, Plaintiffs do not allege that John Andrews was deprived of his liberty apart from his initial arrest.  To the contrary, they allege he was released on bond.  They have not set forth a viable claim for malicious prosecution under the Fourth Amendment.

### 4.  Fifth Amendment

Although Plaintiffs do not clearly indicate the nature of their Fifth Amendment claim, when read in context with the remainder of the Complaint, it is possible that Plaintiffs are attempting to assert a violation of the Takings Clause when the Officers confiscated Plaintiffs' weapons.  Among its many other proscriptions against government infringement on individual rights, the Fifth Amendment, which is made applicable against the states and their subdivisions through the Fourteenth Amendment, provides: "... nor shall private property be taken for public use, without just compensation."  U.S. Const. amend. V ("Takings Clause"); *see Lingle v. Chevron U.S.A. Inc.*, 544

22

U.S. 528, 536 (2005); *River City Capital, L.P. v. Bd of Cty Com'rs, Clermont County, Ohio*, 491 F.3d 301, 306 (6th Cir. 2007).  Although a claim under the Takings Clause may be asserted in a § 1983 action, Plaintiffs have not alleged that the government confiscated their property for public use without providing just compensation.  They assert that the officers confiscated their property without due process.  While the analysis is similar under the Fifth and Fourteenth Amendments, this claim is better addressed under the Fourteenth Amendment Due Process Clause, not under the Takings Clause of the Fifth Amendment.

If Plaintiffs intended to assert some other claim under the Fifth Amendment, they failed to do so.  Principles requiring generous construction of *pro se* pleadings are not without limits.  *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985).  A Complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements.  *See Schied v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988).  District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments.  *Beaudett*, 775 F.2d at 1278.  To do so would "require ...[the Courts] to explore exhaustively all potential claims of a *pro se* plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.* at 1278.  Moreover, Plaintiffs' failure to identify a particular legal theory under the Fifth Amendment places an unfair burden on the Defendants to speculate on the potential claims that Plaintiffs may be raising against them and the defenses they might assert in response to each of these possible causes of action.  *See Wells v. Brown*, 891 F.2d at 594.  If Plaintiffs intended to assert a claim under the Fifth Amendment

23

other than a claim under the Takings Clause, it does not meet federal notice pleading requirements and is dismissed.

### 5.  Eighth Amendment

Plaintiffs' Eighth Amendment claim was addressed previously.  Claims pertaining to excessive bail are not applicable to the law enforcement officers and the prosecutors are immune for such actions.  Even if the law enforcement Defendants were responsible for setting bail, Plaintiffs do not indicate the amount of bail that was set for John Andrews. Their claim that bail was "excessive" is stated solely as a legal conclusion which does not state a claim upon which relief may be granted.  *Iqbal*, 556 U.S. at 678.

### 6.  Fourteenth Amendment

Plaintiffs assert three potential claims under the Fourteenth Amendment.  First, Plaintiffs' claim pertaining to the continued deprivation of weapons originally taken from their home can be construed as asserting a claim for denial of procedural due process.  Second, Plaintiffs may also be attempting to assert an unspecified claim against the officers for denial of substantive due process. Finally, Plaintiff's claim the Defendants denied them Equal Protection.

### a.  Due Process Clause

The Due Process Clause has a procedural component and a substantive one.  The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power.  A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a person's life, liberty, or property interest.  It simply requires that the government provide "due process" before making such a decision.  *Howard v. Grinage*,  82 F.3d 1343, 1349

-1353 (6th Cir. 1996).  The goal is to minimize the risk of erroneous deprivation, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process.  *Id*.  Procedural due process requires that an individual be given the opportunity to be heard "in a meaningful manner."  *See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir. 1983).  Many procedural due process claims are grounded on violations of state-created rights, or rights that do not enjoy constitutional standing.  *See id.*  The rationale for granting procedural protection to an interest that does not rise to the level of a fundamental right is to prevent  the arbitrary use of government power.  *Howard*, 82 F.3d at 1349.  Procedural due process claims do not consider the egregiousness of the deprivation itself, but only question whether the process accorded to the deprivation was constitutionally sufficient.  *Howard*,  82 F.3d at 1350.  Although the existence of a protected liberty or property interest is the threshold determination, the focus of this inquiry centers on the process provided, rather than on the nature of the right.

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures used. *See Daniels v. Williams*, 474 U.S. 327, 331 (1986). Substantive due process serves as a vehicle to limit various aspects of potentially oppressive government action.  *Id*.  It serves as a check on legislation that infringes on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "shocking to the conscious," as to rise to the level of a constitutional violation.  *Howard*, 82 F.3d at 1349.

### 1. Procedural Due Process

To prevail on a procedural due process claim, Plaintiffs must plead and prove either that the Defendants deprived them of their liberty or property as a result of an established state procedure that itself violates due process rights; or that the Defendants deprived them of liberty or property pursuant to a random and unauthorized act and available state remedies would not be adequate to redress the deprivation. *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir 1991); *see Vicory v. Walton*, 721 F.2d 1062, 1064 (6th. Cir. 1983). With respect to their claim pertaining to their weapons, Plaintiffs do not challenge an established state procedure. They do not assert that the Chardon Police Defendants are acting pursuant to a state procedure in withholding their weapons. Rather, it appears they are asserting that the weapons have not been returned pursuant to the unauthorized actions of the Defendants.

Plaintiffs must also plead and prove that state remedies for redressing the wrong are inadequate. *Macene*, 951 F.2d at 706; *Vicory*, 721 F.2d at 1064. They indicate they requested return of the weapons through the courts. The Geauga County Defendants state they do not have these weapons in their possession. The Chardon Defendants did not indicate whether they are in possession of the weapons. Plaintiffs do not indicate whether they have continued to pursue the return of their weapons through the state courts. In addition, Plaintiffs may also have a remedy through the Court of Claims. *See Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir.1989). They have not alleged facts to suggest these state remedies are inadequate to address the alleged wrong. Plaintiffs therefore cannot prevail on a procedural due process claim.

In addition, Plaintiff's do not clearly allege which Defendants are responsible for failing to return the weapons to them. The Geauga County Defendants indicate they do not have the weapons

in their possession. Plaintiffs do not indicate which of the Chardon Defendants, if any, are refusing to return them. Consequently, even if they had stated a claim for denial of procedural due process with respect to the weapons, the claim would be dismissed against these Defendants.

### b. Substantive Due Process

Plaintiffs' substantive due process claim is also subject to dismissal. Due process claims of this nature involve official acts which cause a deprivation of a substantive fundamental right. *Mertik v. Blalock*, 983 F.2d 1353,1367 (6th Cir. 1993). In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience." *See United States v. Salerno*, 481 U.S. 739, 746 (1987). These actions are unconstitutional regardless of the procedural protections provided. *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989). A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agent. Id. at 833. The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." Id.

If Plaintiffs are asserting a substantive due process claim, it would appear to be based on conduct alleged to be so severe that it shocks the conscience. None of the allegations in the Complaint suggest this extreme standard has been met. Moreover, where a specific Amendment provides an explicit source of constitutional protection against a particular sort of governmental conduct, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Plaintiffs asserted claims under the Fourth, Fifth, and Sixth Amendments, which were already considered by this Court. Any claims Plaintiffs may be asserting under the Substantive Due Process Clause are

27

dismissed.

### 2.  Equal Protection

Plaintiffs assert without explanation that they were denied equal protection.  The Equal Protection Clause prohibits discrimination by government officials which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 -682 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir.2005).  The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).  When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.

Plaintiffs' equal protection claim fails at the outset because they do not allege that they were treated differently than other people in their same situation.  They do not describe any situation in which they were subjected to discrimination.  Consequently, they cannot claim they were denied the equal protection of the law.

### F.  Conspiracy Claims

Plaintiffs assert conspiracy claims under either 42 U.S.C. § 1983, 42 U.S.C. § 1985, Ohio tort law, or all of the above.  Regardless of the legal theory under which the claim is asserted, Plaintiffs fail to state a claim for civil conspiracy.  A civil conspiracy is an agreement between two or more persons to injure another by unlawful action.  *Hooks v. Hooks*, 771 F.2d 935 (6th Cir.1985).  Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy; however, Plaintiffs must show that there was a single plan, that the alleged coconspirators shared

in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the Plaintiffs.  *Id*. at 943-44.  It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim.  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987).

This claim does not meet the requisite degree of specificity needed to sustain a conspiracy claim under § 1983.  Plaintiffs merely allege without explanation that the Defendants conspired together.  They provide no information about the objective of the conspiracy, who was involved in the conspiracy, and what actions they each took to further the objectives of the conspiracy.  Plaintiffs conspiracy claims fail to meet the heightened pleading standards required to state a claim for relief.

Plaintiffs' claim under 42 U.S.C. § 1985 must also be dismissed.  To establish a violation of § 1985, they must allege that the Defendants conspired together for the purpose of depriving the Plaintiffs of the equal protection of the laws and committed an act in furtherance of the conspiracy which was motivated by racial or other class-based invidiously discriminatory animus.  *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999).  Plaintiffs do not allege facts to suggest that any of the Defendants conspired together to deprive then of their right to equal protection of the law or that the Defendants' actions were in any way motivated by the Plaintiffs' race, or membership in a protected class.

Because Plaintiffs failed to state a claim under § 1985, their claims for relief under § 1986 must also be dismissed.  Section 1986 imposes liability on those individuals who have knowledge of any of the wrongs prohibited by § 1985, yet fail to prevent them.  Without a violation of § 1985, there can be no violation of § 1986.

### G.  State Law Claims

Plaintiffs may also be asserting claims which could arise under Ohio law, including their claims for spoilation of evidence and malicious prosecution.  This Court can exercise supplemental jurisdiction over state law claims if the state law and federal law claims derive from the same nucleus of operative facts and if considerations of judicial economy dictate having a single trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966).  The court, however, has discretion in hearing state law matters and in cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed.  *Id.* at 726.  All of Plaintiffs' federal claims have been dismissed.  The Court therefore declines jurisdiction over any potential state law claims Plaintiffs may be asserting.

### H.  Class Action Certification

Finally, Plaintiffs seek class action certification.   Class certification is governed by Fed.R.Civ.P. 23, which provides in pertinent part:

> 2 (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if :
>
> > (1) the class is so numerous that joinder of all members is impracticable,
> > (2) there are questions of law or fact common to the class,
> > (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
> > (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs do not allege facts to suggest there is a class of potential plaintiffs so large that joinder of all members is impracticable, nor do they demonstrate that there are questions of law or fact common to the class.  In fact, the claims in this action are very specific to the arrest and prosecution of John Andrews.  In addition, those claims have all been dismissed for failure to state a claim upon

which relief may be granted.

Moreover, Plaintiffs fail to establish that "the representative parties will fairly and adequately protect the interests of the class." Plaintiffs are *pro se* litigants. It is well established that "[a] litigant may bring his own claims to federal court without counsel, but not the claims of others." *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) (internal quotation omitted). Rule 23(a)(4) does not permit a *pro* se litigant to serve as a class representative. *See Howard v. Dougan*, No. 99-2232, 221 F.3d 1334, 2000 WL 876770, at * 1 (6th Cir. June 23, 2000)("The district court properly declined to certify the class and appoint Howard as class representative as he is an incarcerated pro se litigant without legal training"); *Hammond v. O'Dea*, No. 91-5089, 932 F.2d 968, 1991 WL 78161, at *2 (6th Cir. May 14, 1991)(*pro se* litigants are not adequate representatives for a class action). Class action certification is not warranted in this case, and the request for certification is denied.

## Conclusion

Accordingly, Plaintiffs' Motion for Default Judgment (ECF No. 11) is denied. Defendants' Motions to Dismiss (ECF Nos. 16 and 17) are granted, Plaintiffs' Motion to Strike Defendants' Motions to Dismiss (ECF No. 18), Motion for Objection and to Strike Defendants' Motions to Dismiss (ECF No. 22), Motion to Show Cause (ECF No. 25), and Motion for Objection and to Strike Defendants' Motions to Dismiss (ECF No. 28) are denied, and this action is dismissed. Plaintiffs'

Motion for Preliminary Injunction (ECF No. 12) and Motion for Extension of Time (ECF No. 19) are denied as moot.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.


IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT


September 30, 2014

32